UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | S4 22 Cr. 19 (PGG) |
| -v.- | |
| ARTHUR BOGORAZ, | |
| Defendant. | |

## DEFENDANT ARTHUR BOGORAZ'S
## <u>MOTION TO WITHDRAW HIS PRIOR PLEA OF GUILTY</u>

## PRELIMINARY STATEMENT

Defendant Arthur Bogoraz respectfully moves pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B) to withdraw the plea of guilty that he entered in this case on January 16, 2024. Bogoraz's purpose in moving to withdraw is to provide an opportunity for the Government to re-extend (and Bogoraz to immediately accept) the less-severe plea offer that Bogoraz rejected in October 2023 based on his lack of understanding of the dramatic increase in sentencing exposure that would result from his doing so.

This motion follows several months of good-faith dialogue between undersigned counsel and the Government about the circumstances in which Bogoraz's case was resolved, which concluded earlier today. Following that dialogue, and Bogoraz's sharing a draft of this motion with the Government for it to consider, the Government does not oppose this motion, but nor will it consent to the motion without further development of the factual record at a hearing. The Government has authorized undersigned counsel to represent to the Court that in the event the Court allows Bogoraz to withdraw his current plea, the Government is "open to re-extending the prior plea offer" that Bogoraz rejected in October 2023 and seeks now to accept.

For the reasons discussed below, Bogoraz respectfully submits that the existing factual record here, which includes an affidavit from Bogoraz, two affidavits from his prior counsel, and a host of electronic communications between and among prior counsel, the Government, and the coordinating discovery attorney in the case, is sufficient to support the motion to withdraw without further factual development at a hearing.[1]

---

[1] In the event that the Court holds a hearing, counsel respectfully requests that it take place on July 25, 2024, which is a date the parties had already set aside for Bogoraz's sentencing, or on a later date that is convenient to the Court. Counsel also respectfully requests that Bogoraz's sentencing be adjourned until at least two weeks after the Court rules on this motion.

On January 16, 2024, Bogoraz pleaded "open" to Counts Four and Five of the S4 Indictment in this case (Docket No. 282), charging him, respectively, with conspiracy to commit Travel Act bribery, in violation of Title 18, United States Code, Section 371, and conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). The Travel Act offense carries a statutory maximum term of imprisonment of five years, and the money laundering offense carries a maximum of 20 years, for a total maximum possible sentence of 25 years. The Probation Department has calculated, in its Initial Pre-Sentence Report, an advisory Guidelines range for Bogoraz of 25 years.

Bogoraz's open plea followed his rejection of a plea offer that would have limited his sentencing exposure to five years' imprisonment. On or about October 13, 2023, the Government extended a written plea offer to Bogoraz, attached hereto as Exhibit A, requiring him only to plead guilty to the Travel Act offense (the "October 2023 Plea Offer"), which at the time was the sole crime with which he had been charged. Bogoraz declined that Offer, based on his understanding from prior counsel that if he did so, there was no realistic possibility that the Government would obtain a superseding indictment against him that would substantially increase his sentencing exposure, and his further understanding from prior counsel that there was no basis in the discovery for the Government to add a money laundering charge against him. (*See* Affidavit of Arthur Bogoraz dated March 22, 2024 (Exhibit B)). Bogoraz's rejection of the

---

Although this motion is being filed several weeks before Bogoraz's scheduled sentencing, Bogoraz (through undersigned counsel) has been in a good-faith dialogue with the Government about this request, and the reasons underlying it, since approximately late January 2024. Beginning in March 2024, undersigned counsel has met in-person with representatives of the United States Attorney's Office to discuss the request on three occasions, the most recent of which was June 30, 2024, and have spoken with them about it by phone many times since January. After the completion of our dialogue and a review of a draft of this motion, the Government provided its current position on this request on July 9, 2024, and Bogoraz filed this motion as soon as practicable thereafter.

October 2023 Plea Offer caused a 20-year swing in his sentencing exposure, as the Government swiftly obtained a superseding indictment charging him with the money laundering offense. Having pleaded open to both charges in the S4 Indictment, Bogoraz now faces the prospect of 25 years in prison instead of five.

Rule 11(d)(2)(B) provides that a defendant can withdraw a plea of guilty prior to sentencing if he can show a fair and just reason for requesting the withdrawal, a determination that is left to the sound discretion of the district court. Based on the totality of the circumstances here, such a reason exists. Bogoraz rejected the October 2023 Plea Offer due to his lack of understanding of how such a rejection could affect his sentencing exposure. The advice of his prior counsel in this regard – which was informed in part by a disconnect between and among prior counsel, the coordinating discovery attorney, and the Government as to what discovery prior counsel had requested or received – fell below the Constitutional standard for effectiveness, and caused Bogoraz significant prejudice. It is in the interest of fairness and justice to allow Bogoraz to withdraw from his open plea so that he can promptly enter into the plea agreement that he would have accepted in October had he understood the life-altering risk he was taking by declining to do so – an agreement the Government continues to believe is fair, as reflected in its openness to re-extending it if Bogoraz is permitted to withdraw his open plea.

## PROCEDURAL HISTORY

### Initial Charge and Sentencing Exposure

On January 11, 2022, the Government obtained an indictment charging Bradley Pierre, Marvin Moy, and William Weiner with conspiracy to commit healthcare fraud, in violation of Title 18, United States Code, Section 1349, and conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). (Docket No. 1). In the same

indictment, Bogoraz, along with Pierre and Andrew Prime, was charged with conspiracy to

commit Travel Act bribery, in violation of Title 18, United States Code, Section 371.  (*Id.*).  The

substance of the Travel Act charge, as articulated in the Indictment, was agreeing to participate

in a bribery scheme whereby employees or agents of hospitals, the New York City Police

Department, emergency medical services, and other entities disclosed protected, confidential

information of tens of thousands of motor vehicle accident victims in exchange for payment.

(Docket No. 1 ¶ 34).  Bogoraz's sentencing exposure on the Travel Act count was five years'

imprisonment.  He was arrested on January 12, 2022 and detained until mid-February 2022,

when he was released pursuant to a secured bond.  (Docket No. 55).

### *Production of Discovery*

This case was charged at the same time as a related case captioned *United States v.*

*Gulkarov*, 22 Cr. 20 (PGG), and both cases were related to a 2019 case captioned *United States*

*v. Rose*, 19 Cr. 789 (PGG).  The relationship between and among these cases resulted in some

confusion in the rollout of discovery in *Pierre*, as described below, and Bogoraz's prior counsel

did not obtain all of the discovery that he should have.

On January 15, 2022, the Government emailed counsel for all of the defendants in the

*Pierre* and *Gulkarov* cases, stating, among other things: "We propose using Julie de Almeida as

a discovery coordinator.  As you're probably aware, this is the second round of indictments

arising out of *U.S. v. Rose*, 19 Cr. 789 (PGG).  The Court appointed Julie as discovery

coordinator in the first case.  If we use Julie again, she can immediately provide you a substantial

amount of discovery for this round."  (Ex. C).  The email said that if defense counsel chose to

use Ms. Almeida's services, they should send one external hard drive to her and a separate one directly to the Government for individual discovery.  (*Id.*).

On January 27, 2022, Ms. Almeida emailed defense counsel somewhat contradicting the Government's email, stating that her office "would **not** be able to" prepare discovery on their behalf in the *Pierre* or *Gulkarov* cases because the majority of counsel in those cases were retained.  (Ex. D (emphasis added)).  However, she said that her office would coordinate with the Government to send the discovery to a vendor from whom defense counsel could request copies (and to whom defense counsel could submit payment) directly.  (*Id.*).  In a separate paragraph in the email, Ms. Almedia said that if counsel in the *Pierre* or *Gulkarov* cases wanted copies of materials that her office had previously prepared in the *Rose* case (the "*Rose* Discovery"), they should send her a hard drive.  (*Id.*).  The email did not say whether the *Rose* Discovery constituted relevant discovery for specific individuals in the *Pierre* case or whether, if it did, such materials would be reproduced by Ms. Almeida or the Government in the normal course of providing defense counsel with the *Pierre* discovery.

On January 31, 2022, Ms. Almeida filed a letter with the Court asking it to withdraw her appointment as coordinating discovery attorney for the *Pierre* and *Gulkarov* matters.  (Docket No. 36).  Ms. Almeida noted in the letter that her office had agreed to duplicate the *Rose* Discovery, which she described as "voluminous," and provide it to any defense counsel in the *Pierre* or *Gulkarov* matters who "would like a copy" of it and who sent her a hard drive and payment for it.  (*Id.*).

On February 2, 2022, Ms. Almeida sent a letter to defense counsel in the *Pierre* and *Gulkarov* cases captioned "Re: U.S. v. Pierre 22 Cr. 19 and Gulkarov 22 Cr. 20 (PGG)" stating: "The Government has represented that the supplemental discovery production **directly related**

**to these matters** will consist of 4 terabytes of encrypted information." (Ex. E (emphasis added)). She then set forth a "proposed plan" and budget for this production that included the following: "Procure and prepare hard drives with the 3.8 TB of devices seized, forensic files, generated reports and device index and search tools from the related *US v. Anthony Rose* matter." (*Id.*). The plain language of the letter appears to suggest that certain materials "from the related . . . *Rose* matter" would be reproduced as part of the hard drive of discovery that was "directly related to" the *Pierre* matter.

Separate from Ms. Almeida, the Government began producing certain discovery directly to the defendants, through counsel, on February 4, 2022. In an email attaching its first discovery letter, the Government stated, "Julie de Almeida should have already sent out the *Rose* discovery if you've sent her a drive. On Monday, we're going to mail Julie the first round of discovery **for your indictment**." (Ex. F (emphasis added)).

On February 15, 2022, Ms. Almeida invited defense counsel in the *Pierre* and *Gulkarov* cases to a Zoom training concerning "the discovery sent to you from the related Rose case." (Ex. G). The training was held on February 17, 2022. Prior counsel for Bogoraz did not attend, nor does Bogoraz, who was recovering from a significant health event he had suffered approximately four days earlier (*see* Docket No. 431 at ¶ 101) after being released from the MDC, recall attending. Ms. Almeida sent to undersigned counsel a document that reflects the substance of the training on the *Rose* Discovery, which is attached as Exhibit P. Based on a review of Exhibit P, the training was about the mechanics of accessing the *Rose* Discovery.

On February 18, 2022, Ms. Almeida forwarded prior counsel for Bogoraz the February 2, 2022 proposed plan discussed above, *supra* at 5-6, with a cover email titled "Fwd: U.S. v. Pierre 22 Cr. 19 Estimate and Signature Page," and stating the following, in part: "Hope you were able

to join the Rose discovery training yesterday [he had not]. I sent the Rose cheat sheet and device index along with this estimate yesterday. ***It seems the Government has reproduced some of the devices so it makes sense to hold off on copying the Rose devices for now*** [emphasis added]. If you would like my office to prepare, organize, and manage the discovery in this matter please let me know and sign and send back the attached document." (Ex. H). On March 9, 2022, Ms. Almeida replied to her own email, stating, in part, "Just following up on this . . . we hope to purchase the hard drives and duplicate the material at the end of this week. Please let me know if you are signing up or opting out." (Ex. I). Prior counsel responded the same day ***opting in*** to receive the discovery: "Julie, please see the attached for my signature to opt-in on behalf of my client Arthur Bogoraz." (Ex. J).

On March 11, 2022, Ms. Almeida emailed defense counsel in the *Pierre* and *Gulkarov* cases that the Government had now provided to her "the non-native files to complete the global discovery production in this case. We are replacing the non-native and corrupted files with these replacements and preparing to burn the hard drives of the materials for you." (Ex. K). She provided a price per defendant for obtaining the hard drives plus two training sessions on the discovery. (*Id.*). Attached to the email was a revised version of the February 2, 2024 letter described above, *supra* at 5-6, with substantially similar content (including the proposed plan), and a proposed price. (Ex. L).

On March 16, 2022, prior counsel for Bogoraz paid Ms. Almeida the discovery fee that she set forth in the March 11, 2022 letter, for a drive for him and a drive for Bogoraz to review the discovery himself. (Ex. M). Later that day, Ms. Almeida sent a letter to defense counsel in the *Pierre* and *Gulkarov* matters stating: "The review of the discovery in this matter is now ***complete and included on the enclosed flash drive*** [emphasis added]." (Ex. N). Prior counsel

for Bogoraz received that flash drive, which he believed included all of the discovery for the *Pierre* case other than individual discovery that he might receive directly from the prosecutors. (*See* Supplemental Affidavit of Aaron Rubin (Exhibit R) at ¶ 5).  On March 29, 2022, Ms. Almeida held a Zoom training session for review of the discovery in the *Pierre* and *Gulakarov* matters, which both Bogoraz and his prior counsel attended.  (*See* Ex. O).

Separate from Ms. Almeida, in the period before the October 2023 Plea Offer expired, the Government sent discovery letters to Bogoraz's prior counsel on the following dates: February 4, 2022; March 10, 2022; March 16, 2022; April 4, 2022; April 13, 2022; May 17, 2022; May 15, 2023; May 31, 2023; July 14, 2023; July 24, 2023; August 7, 2023; and August 21, 2023.[2]  The letters from the Government did not speak one way or the other to the question of whether any aspects of the *Rose* Discovery that also constituted discovery for Bogoraz in the *Pierre* case, if any, would be included in the *Pierre* discovery materials that were being produced by Ms. Almeida.

### *Superseding Indictment and Plea Negotiations*

On June 26, 2023, the Government obtained a superseding indictment in the case (the "S2 Indictment") that did not add any charges against Bogoraz.  (Docket No. 191).   Bogoraz's sentencing exposure under the S2 Indictment was five years' imprisonment.  On August 28, 2023, the Court arraigned all of the defendants on the S2 Indictment and set a trial date of January 16, 2023.

On September 11, 2023, the Government sent an email to prior counsel for Bogoraz indicating that it was considering extending a plea offer to Bogoraz for the Travel Act offense

---

[2] Undersigned counsel has these letters and will provide them to the Court if the Court believes they would be helpful to review.

(which carries a five-year statutory maximum sentence) and that it anticipated "superseding [Bogoraz] into the money laundering count" if Bogoraz proceeded to trial. (Docket No. 286, Ex. A). Prior counsel forwarded that email to Bogoraz. On October 2 and October 4, 2023, the Government moved for an adjournment of the trial date to March 2024 due to a scheduling conflict for members of the prosecution team with the preexisting trial date. (Docket Nos. 230 and 235). Several of the defendants, including Bogoraz, opposed the adjournment (Docket Nos. 240, 241). On October 11, 2023, the Court held a conference and denied the Government's request for an adjournment of the trial date.

On October 13, 2023, the Government extended a formal written plea offer to Bogoraz through counsel. The October 2023 Plea Offer contemplated that Bogoraz would plead guilty to the offense he was charged with in the operative S2 Indictment – conspiracy to violate the Travel Act. Pursuant to such a plea, Bogoraz would have faced a statutory maximum sentence of five years' imprisonment, and an advisory Guidelines range of five years' imprisonment. This would have been the same statutory maximum and Guidelines range that would have applied had Bogoraz proceeded to trial on the S2 Indictment and been convicted.

### *Advice from Prior Counsel regarding October 2023 Plea Offer*

In the days following the extension of the October 2023 Plea Offer, Bogoraz consulted with his prior counsel about whether to accept the Offer, including specifically about the risks associated with turning down the Offer. (Ex. B at ¶ 7). One of the issues he discussed with prior counsel was whether he should be concerned that if he turned down the Offer, the Government would obtain another superseding indictment charging him with a money laundering offense, which in turn would increase his sentencing exposure exponentially. (*Id.* ¶ 8). This question was critical to his decision-making process. (*Id.*) Prior counsel told Bogoraz, in substance, that

there was no realistic possibility that the Government would obtain a superseding indictment charging him with a money laundering offense if he turned down the October 2023 Plea Offer. (*Id.* ¶ 9).  Prior counsel also told Bogoraz, in substance, that there was no basis in the discovery that had been produced to date for the Government to obtain a timely and viable indictment charging him with a money laundering offense.  (*Id.* ¶ 10).  At the time, prior counsel believed that he had received all of the discovery for Bogoraz in the *Pierre* case.  In fact, however, he had not.  These facts are supported by Mr. Bogoraz's affidavit (Exhibit B) and the affidavits submitted by prior counsel (Exhibits Q and R).

In reliance on the advice that he received from prior counsel, Bogoraz did not accept the October 2023 Plea Offer. (Ex. B ¶ 11).  Had Bogoraz understood in October 2023 that there was a realistic possibility that, if he rejected the October 2023 Plea Offer, he would be charged with a money laundering offense that would substantially increase his sentencing exposure, he would have accepted the Offer before it expired on October 30, 2023.  (*Id.* ¶ 14).

### Addition of Money Laundering Charge against Bogoraz

On December 1, 2023, the Government filed a letter informing the Court that it intended to seek a superseding indictment charging Bogoraz with money laundering, which the Government said would not result in any additional Rule 16 disclosures.  (Docket No. 275). Bogoraz's personal reaction to this news was shock and panic.  (Ex. B ¶ 16).  Prior counsel's reaction was similar; he immediately submitted a letter to the Court requesting that the Government be prevented from pursuing the superseding indictment.  (Docket No. 276).  On December 6, 2023, the Government obtained a superseding indictment (the "S3 Indictment") adding a charge against Bogoraz for conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).  (Docket No. 282).  The S3 Indictment increased

Bogoraz's sentencing exposure, for the first time during the pendency of the case, from five years' imprisonment to 25 years' imprisonment.

On December 12, 2023, the Court held a conference at which prior counsel for Bogoraz requested an adjournment of the January 16, 2024 trial date. Prior counsel stated in Bogoraz's presence at the conference that he had no understanding of what the new money laundering charge was. (Docket No. 322 at 5). Prior counsel further indicated that he believed the new charge completely reworked the case against Bogoraz and that he did not know the basis for the new charge. (*Id.* at 6). Prior counsel also stated that he was presently unprepared to bring a defense against the money laundering charge on Bogoraz's behalf. (*Id.* at 9). He expressed to the Court (and in the presence of Bogoraz), in substance, that he felt he could not go to trial on the money laundering charge based on his level of understanding and preparedness. (*Id.*). The Court declined to adjourn the trial date, noting among other things that the Government had given prior counsel for Bogoraz notice in writing in September 2023 that it was considering adding a money laundering charge against Bogoraz, and that the facts of the case had not changed.

### *Briefing regarding Prior Discovery Productions in advance of January 16 Trial Date*

On December 24, 2023, prior counsel for Bogoraz moved the Court to reconsider its decision not to adjourn the trial date. Among other things, counsel said that the financial records relating to the companies through which the Government was now alleging that Bogoraz helped carry out the money laundering offense had not been produced in discovery, meaning that, from prior counsel's perspective, the new money laundering charge did necessitate additional discovery. (Docket No. 312 at 11-13). The Government responded that "Rule 16 materials relevant to the money-laundering charge were produced in connection with the underlying

**indictments**" (emphasis on the plural added), and that "the Government produced bank records for the entities at issue on November 16, 2023." (Docket No. 316). But even this November 16 date came **after** prior counsel had advised Bogoraz that there was no discovery in the case to provide a basis for a money laundering charge against Bogoraz, and Bogoraz had relied on that advice and rejected the October 2023 Plea Offer. In a reply (Docket No. 318 at 5), prior counsel for Bogoraz reiterated that to his knowledge, no discovery supporting the money laundering charge against Bogoraz had been produced in the case until November 16 (again, after Bogoraz and his counsel had already considered and rejected the October 2023 Plea Offer). On January 3, 2024, the Court issued a written Order denying Bogoraz's motion to adjourn the trial, in part because "[t]he Rule 16 discovery relevant to the new money laundering charge [against Bogoraz] was provided to Bogoraz nearly a year and a half ago." (Docket No. 329 at 15).

On January 10, 2024, prior counsel for Bogoraz moved for an adjournment of the trial date for at least 90 days. (Docket No. 359). In substance, prior counsel explained that he had recently learned that there were three terabytes of discovery – seemingly the *Rose* Discovery – that he and Bogoraz had never received from the Government or from Ms. Almeida. *Id.* at 3. Ms. Almeida submitted a responsive letter to the Court setting forth a timeline of discovery productions from her Office in this case (Docket No. 360), and pursuant to the Court's memo-endorsement seeking a clearer statement of why Bogoraz's prior counsel did not receive the *Rose* Discovery in 2022, she filed a supplemental letter informing the Court, in substance, that prior counsel for Bogoraz had not requested or paid for the *Rose* Discovery (Docket No. 361). The Government then filed a letter restating that Bogoraz and his prior counsel had failed to request the *Rose* Discovery in 2022. (Docket No. 363 at 1). Prior counsel for Bogoraz replied in a letter later that day (Docket No. 365 at 1) that he had expected that when he sent hard drives to Ms.

Almeida in 2022 and received discovery from her in return, he was receiving the complete discovery in the case.

The Court directed the parties and Ms. Almeida to appear for a hearing on January 16, 2024 to discuss the issues raised in Bogoraz's January 10 and January 11, 2024 letters relating to his failure to receive the *Rose* Discovery in 2022.  (Docket No. 366).

On January 16, 2024, instead of proceeding with the hearing, Bogoraz pleaded open to Counts Four and Five of the S4 Indictment, in advance of the scheduled trial date of January 22, 2024.[3]  His open plea occurred on the eve of trial in the following context: his prior counsel had stated in open court, in his presence, that counsel was unprepared for the task of mounting a trial defense; that he would not have sufficient time before trial to review the discovery against his client or prepare a defense; and that he did not understand the money laundering charge.

## DISCUSSION

### A.  Applicable Law

Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a plea of guilty before the Court imposes sentence if he can show a fair and just reason for requesting the withdrawal.  A defendant's right to withdraw his plea is not absolute, and is committed to the sound discretion of the district court.  *See United States v. Rosen*, 409 F.3d 535, 545-46 (2d Cir. 2005); *United States v. Harrington*, 354 F.3d 178, 183 (2d Cir. 2004).  "The court has that discretion when the moving defendant satisfies the court that there are valid reasons for withdrawal of the plea and the court concludes that those reasons outweigh any prejudice to the

---

[3] The charges against Bogoraz in the S4 Indictment were identical to those in the S3 Indictment; the Government obtained a superseder to add speaking allegations shortly before the trial date.

government and the strong societal interest in the finality of guilty pleas." *Rosen*, 409 F.3d at 546.

Among other factors, in evaluating a defendant's request to withdraw a plea, courts may consider whether the defendant has asserted his legal innocence; the amount of time that has passed since the entry of the plea; and whether the Government would be prejudiced by the withdrawal of the plea. *See id.* "Courts may also look to whether the defendant has raised a significant question about the voluntariness of the original plea." *United States v. Schmidt*, 373 F.3d 100, 103 (2d Cir. 2004). "Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting a withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 319-20 (2d Cir. 2005). Under the standard established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), legal assistance is ineffective if errors were made that were so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment, and counsel's performance was prejudicial, *i.e.*, there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.

To show prejudice from ineffective assistance of counsel where a plea offer was rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that he would have accepted the earlier plea offer had he been afforded effective assistance of counsel. *Missouri v. Frye*, 566 U.S. 134, 147-48 (2012). Reasonable probability can be shown by a subsequent plea to more serious charge with no promise of a sentencing recommendation by prosecutor (which is exactly what happened in this case). *See id.* Failure to make a defendant aware of his sentencing exposure in the event that he rejects a plea offer

constitutes ineffective assistance. *See, e.g., United States v. Rashad*, 331 F.3d 908, 912 (D.C. Cir. 2003); *United States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000); *Williams v. Jones*, 571 F.3d 1086, 1091 (10th Cir. 2009).

**B.  ARGUMENT**

The fair and just outcome in this case is for Bogoraz to be permitted to withdraw his open plea, which subjects him to a potential term of 25 years' imprisonment, in order to allow him to accept the previously extended plea offer that subjected him to a potential term of five years, which the Government is open to re-extending.  The totality of the circumstances surrounding the way that the case against Bogoraz was resolved makes revisiting the plea process the right thing to do – not a mulligan, but a course correction.

Bogoraz rejected the October 2023 Plea Offer without understanding the risk that doing so would increase his sentencing exposure.  Prior counsel's advice to Bogoraz that any such risk was not realistic fell below the Constitutional standard of effectiveness, regardless of whether, as indeed appears to be the case, the ineffective advice was informed by a disconnect between prior counsel and Ms. Almeida or the Government as to how much of the discovery prior counsel had received.  Bogoraz was plainly prejudiced by his lack of understanding of the risk to his sentencing exposure, as he rejected a plea offer he would otherwise have accepted and almost immediately faced an additional 20 years of sentencing exposure.  Nor, practically speaking, did he have the option of proceeding to trial on the additional charges, as his prior counsel frankly stated in open court that he did not understand the new charges and would not be prepared to mount a defense to them by the scheduled trial date.

Bogoraz should be facing a five- year sentence.  Had he understood that it was a realistic possibility that he could instead face 25 years if he turned down the October 2023 Plea Offer, he

would have accepted it.  This is the type of situation that Rule 11(d)(2)(B) exists to solve – it provides an avenue to avoid the injustice that would result from Bogoraz being sentenced in the current posture.  Simply put, this is a case in which "there are valid reasons for withdrawal of the plea and . . . those reasons outweigh any prejudice to the government and the strong societal interest in the finality of guilty pleas."  *Rosen*,  409 F.3d at 546.

### 1. Bogoraz's Lack of Understanding of His Sentencing Exposure in Rejecting the October 2023 Plea Offer Constituted Ineffective Assistance of Counsel

The decision to allow a defendant to withdraw a prior plea of guilty is left to the sound discretion of the district court, and the standard is one of justness and fairness.  The Court need not find that prior counsel's advice in the plea negotiation phase of the case was Constitutionally ineffective in order to conclude that that standard has been met.   However, here, it was.

According to both Bogoraz and his prior counsel, during the pendency of the October 2023 Plea Offer, Bogoraz was given to understand from prior counsel – notwithstanding the Government's September 2023 email to the contrary – that there was no realistic possibility that his sentencing exposure would substantially increase if he rejected the Offer, and that there were no materials in the discovery that would provide a basis for a timely and viable money laundering charge to be added against Bogoraz in this case.  According to both Bogoraz and his prior counsel, Bogoraz relied on this advice in deciding not to accept the October 2023 Plea Offer.  Shortly after Bogoraz rejected the Offer, and contrary to what he had been given to understand was realistically possible from counsel, Bogoraz was charged with money laundering and his sentencing exposure increased from five to 25 years.

The understanding prior counsel gave to Bogoraz that there existed no realistic possibility of an increase in sentencing exposure if he turned down the October 2023 Plea Offer fell below the Constitutional standard of effectiveness.  "[U]nderstating both the strength of the

Government's case and of [the client's] sentencing exposure," as occurred in tandem here, are errors "sufficiently serious to meet the first part of the *Strickland* test" where a defendant has relied on his counsel's advice in considering a plea offer. *Rashad*, 331 F.3d at 326-27 (remanding for evidentiary hearing to determine to develop a record on the prejudice prong of the *Strickland* test); *see also, e.g.*, *Iaea v. Sun,* 800 F.2d 861, 865-65 (9th Cir. 1986). In *Iaea*, the Court of Appeals for the Ninth Circuit found that the first prong of the *Strickland* test had been met where defense counsel had told a defendant considering a plea offer that there was almost no chance of his receiving an extended term of imprisonment if he accepted the plea, even though the prosecutor had made clear that he intended to seek such a sentence (which, in fact, the defendant received after pleading pursuant to counsel's advice). Likewise here, Bogoraz received legal advice that a superseding indictment charging him with money laundering was not a realistic possibility, even though the Government had stated in writing that it was.

The *Strickland* standard for prejudice has been met here as well. "In a case, such as this, where a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel cased him to miss out on a more favorable plea offer, *Strickland[]* . . . requires looking [at] . . . whether he would have accepted the offer to plead pursuant to the terms earlier proposed." *Frye*, 566 U.S. at 148. Bogoraz's affidavit establishes that had he understood while the October 2023 Plea Offer was pending that rejecting it would give rise to a realistic possibility of a hike in his sentencing exposure, he would have accepted the Offer. Bogoraz's actions in this regard support his sworn statement – he did not end up fighting his case at trial, *cf. id.* at 150 ("The Court of Appeals did not err in finding [defendant's] acceptance of the less favorable plea offer indicated that he would have accepted the earlier (and more favorable) offer had he been apprised of it . . . ."), and he began a dialogue with the Government about withdrawing his open

17

plea in order to get his old Offer back, **not** in order to go to trial.  Nor can there be any doubt that the increase in sentencing exposure from five to 25 years, particularly where the advisory Sentencing Guidelines match the statutory maximum, prejudices Bogoraz.  Potentially 20 years of his life hang in the balance.

Even before considering the discovery issues discussed below, Bogoraz's reliance on his counsel's mistaken advice regarding the potential reality of a sentencing hike – which is established in the affidavits of each of Bogoraz and his prior counsel – is cause for allowing him to withdraw his plea so that he can accept the prior offer that he should have entered into in the first place.  The legal advice rose to the level of ineffectiveness, but the analysis of what is fair and just does not have to proceed that far.  The way that Bogoraz arrived at the decision to reject the October 2023 Offer was plainly problematic, and the prejudice to the Government in allowing him to withdraw his subsequent, harsher plea is non-existent – he has no intention of proceeding to trial, is prepared to immediately accept the prior Offer, and has been transparent about that with the Government.  Indeed, the Government is open to re-extending the prior Offer, a tacit acknowledgment that such an outcome would be fair, and that the Government would not be prejudiced by it.  This is a case in which the existing factual record is sufficient to justify a withdrawal.

### 2. Confusion over the Production of Discovery Counsels in Favor of Allowing Bogoraz to Withdraw His Plea in the Interest of Justice

The rollout of discovery to Bogoraz's prior counsel in the *Pierre* case was confusing, as the lengthy chronology set out above makes clear.  Without ascribing blame to either prior counsel, Ms. Almedia, or the Government – an exercise that would be unnecessary and tangential to this motion – it is an indisputable fact that prior counsel ordered from Ms. Almeida the discovery in the single case in which Bogoraz is charged (the *Pierre* case); was told that a

flash drive he received from her contained the full discovery in the case; and was nevertheless missing discovery for Bogoraz which he had failed to separately order under the title of a different, but related, case.  It is also an indisputable fact, discernable from the public filings and court appearances alone, that Bogoraz and prior counsel reacted with alarm at learning, after a money laundering charge was brought against Bogoraz, that there was additional discovery they had never obtained.  There was undeniably a failure of communication between and among Bogoraz and his counsel, Ms. Almeida, and the Government as to whether Bogoraz had requested and obtained all of the materials that would qualify as discovery in the *Pierre* case. The result is that Bogoraz made plea bargaining decisions based on an incomplete set of the discovery.  This reinforces the importance of allowing him to withdraw his open plea.

The confusion over the discovery compromised Bogoraz's plea negotiations in at least two separate ways.  ***First***, he and his prior counsel had incomplete information when they turned down the October 2023 Plea Offer.  Prior counsel told Bogoraz that there was no basis in the discovery to support a money laundering charge against him.  But it turns out that when he gave that advice, prior counsel was not in possession of the *Rose* Discovery.  The *Rose* case is presumably one of the plural "underlying indictments" the Government later cited when it explained to the Court that the discovery underlying the money laundering charge had already been produced in connection with those indictments.  *See supra* at 11-12.  Nor is the problem limited to the fact that prior counsel gave advice without the full discovery; Bogoraz himself also lacked the full discovery.  Bogoraz obtained a copy of the *Pierre* discovery for himself in order to review it.  *See supra* at 7.  Like his counsel, he was working with less than a full deck in October 2023.

Indeed, this is true even if one were to set aside the *Rose* Discovery. The Government produced discovery to support its new money laundering charge against Bogoraz in November 2023, approximately two months before trial and several weeks ***after*** Bogoraz had relied on advice from his counsel that there was no basis in the discovery for a money laundering charge to be added against him. *Supra* at 12.

**Second,** prior counsel's unfamiliarity with the discovery that he had not possessed prior to at least November 2023 led him to conclude that he was unprepared to defend Bogoraz at trial on the S4 Indictment, a fact that he honestly admitted in front of Bogoraz several times. His unpreparedness effectively deprived Bogoraz of the option of going to trial – it was something his lawyer said that he was not prepared to do. *Cf. Williams*, 571 F.3d at 1091 (holding that defendant was deprived of effective assistance where lawyer pushed him to go to trial by indicating that he would withdraw as counsel if defendant accepted plea offer). The significance of this point is not that Bogoraz has any desire to try this case – he does not. It is that the confusion over what discovery had been produced to prior counsel not only affected the plea negotiations in October 2023, but also spilled over into the decision to take the open plea in January 2024.

In short, when Bogoraz made the decision to reject the October 2023 Plea Offer, he and his counsel were missing discovery in the *Pierre* case without realizing it. This disconnect furthers the fairness and justness of Bogoraz's request to revisit the Offer.

### 3.    Other Facts Support Withdrawal

While Bogoraz is not asserting his factual innocence, the balance of the other factors that courts often consider in determining whether to permit a defendant to withdraw a plea favor allowing Bogoraz to do so here.

The clearest such factor here is the absence of any prejudice that the Government would suffer from the withdrawal, and similarly the lack of damage to the public interest in the finality of guilty pleas.  The entire purpose of Bogoraz's motion to withdraw is to recapture a prior plea agreement that he has committed to accepting immediately, and that the Government is open to re-extending.  It is not to start the case from square one, put the Government to its proof, or expend the Court's (and a jury's) resources at a trial.  It is to ensure that the outcome of this case is a just one.

The timing of the motion likewise militates in favor of allowing Bogoraz to withdraw his plea.  While the motion itself is being filed nearly six months after the open plea, discussions with the Government about finding an avenue for the October 2023 Plea Offer to be re-extended and accepted began in January 2024 – the same month that the open plea was entered.  The dialogue between the parties in the ensuing months has been extensive and carried out in good faith, and has resulted in the Government's decision on July 9, 2024 not to affirmatively oppose the motion.  While the Government will not give its affirmative consent to the motion without a hearing, undersigned counsel respectfully submits that the facts set forth herein and supported by the attached exhibits already constitute an ample record for allowing the withdrawal.

## <u>CONCLUSION</u>

For all of the foregoing reasons, we respectfully ask that Bogoraz be permitted to

withdraw his plea.

Dated:  July 9, 2024
New York, New York

By:    MAX NICHOLAS LLC

     /s/
Max Nicholas
40 Exchange Place, Suite 1800
New York, NY 10005
(646) 741-0229

*Attorneys for Arthur Bogoraz*