

*U.S. Department of Justice*

*United States Attorney
Southern District of New York*

*26 Federal Plaza
New York, New York 10007*

December 9, 2024

**BY ECF**
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

   Re:  *United States v. Arthur Bogoraz*, 22 Cr. 19 (PGG)

Dear Judge Gardephe:

  Defendant Arthur Bogoraz is scheduled to be sentenced on December 11, 2024, at 2:00 p.m. following his guilty plea to one count of conspiracy to commit bribery, in violation of Title 18, United States Code, Section 371. For the reasons set forth below, the Government respectfully submits that a Guidelines sentence of 60 months' imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

### A. Offense Conduct

#### 1. Wave 1: the November 2019 Indictment

  As the Court is aware, on November 6, 2019, the Government indicted 27 individuals in one of the largest no fault automobile insurance bribery schemes ever prosecuted. *See United States v. Rose et al.*, 19 Cr. 789 (the "Rose Indictment"). The Rose Indictment alleged that from 2014 to November 2019, Anthony Rose, Sr. a/k/a "Todd Chambers" (hereafter, "Rose") and a host of co-conspirators participated in a widespread bribery scheme aimed to exploit insurance programs designed to protect motor vehicle accident victims under New York's no-fault insurance laws. Although similar schemes have been prosecuted before, this scheme was unique due to its size, scope, and sophistication. Ringleader Anthony Rose and other defendants bribed 911 operators, medical personnel, and NYPD police officers for the confidential information of tens of thousands of motor vehicle accident victims. Rose then established a fully staffed "call center" to exploit this information. Rose and the other defendants at the call center contacted accident victims by using the phone numbers stolen from 911 operators and hospital records, and lied to the victims by claiming that they were calling on behalf of the State of New York. Rose and his associates then attempted to steer the accident victims to a preferred "network" of medical clinics and lawyers that were handpicked by Rose and the other defendants. These clinics and lawyers were deemed preferred, because they paid Rose kickbacks for referrals, which Rose distributed to the other defendants.

### 2. Wave 2: the January 2022 Indictments

The Government's investigation did not end with the Rose Indictment. Instead, the Government has always sought to hold responsible the individuals who were truly responsible for facilitating the above-described scheme. The Government accordingly filed two additional indictments in January 2022: *United States v. Pierre, et al*, 22. Cr. 19 (the "Pierre Indictment"), and *United States v. Gulkarov, et al*., 22 Cr. 20 (the "Gulkarov Indictment"). The defendant was one of five defendants charged in the Pierre Indictment.

From at least approximately 2008 through 2021, Bradley Pierre, Marvin Moy, William Weiner, Andrew Prime, and Arthur Bogoraz participated in a criminal scheme to exploit insurance programs designed to protect motor vehicle accident victims (the "No-Fault Scheme"). Presentence Report ("PSR") ¶ 27. As part of the No-Fault Scheme, Pierre, Moy, Weiner, Prime, and Bogoraz fraudulently owned and controlled five medical professional corporations, including clinics and an MRI facility, by paying licensed medical professionals to use their licenses to incorporate the professional corporations (collectively, the No-Fault Facilities or the Facilities). *Id.* Pierre, Moy, Weiner, Prime, and Bogoraz further defrauded automobile insurance companies by billing insurance companies for unnecessary and excessive medical treatments, falsifying clinical findings of injuries in MRIs, and lying under oath to insurance company representatives. *Id.*

The No-Fault Scheme depended on the No-Fault Facilities receiving a steady supply of motor vehicle accident victims. *Id.* ¶ 45. Bogoraz is the manager at his wife's law firm, the Bogoraz Law Group (BLG). *Id.* ¶ 48. Anthony Rose's partner, Jelani Wray, introduced Bogoraz to Rose in approximately 2016, and they all met at Bogoraz's law office. Rose and Wray told Bogoraz that they could supply victims to his law firm in exchange for payment. Bogoraz consented and agreed to pay Rose and Wray approximately $1,000-to-$1,500 per successful victim referral.

Several months later in 2016, Rose met with Bogoraz again and told him how he was referring victims to Bogoraz's law firm. *Id.* ¶ 49. Rose explained that he paid bribes to hospital employees, 911 operators, and the like (Rose's "lead sources") for the confidential information of motor vehicle accident victims—in particular, names and telephone numbers. Rose then transferred this information to his call center, which contacted victims, lied to them, and steered them to seek medical treatment and legal representation from particular facilities and law firms. Rose asked Bogoraz if, in addition to paying for victim referrals, he would also contribute money to bribe additional hospital employees and 911 operators (lead sources), to which Bogoraz agreed.

During the next several years, Bogoraz paid Rose and Wray approximately $800,000 in cash and check. *Id.* ¶ 50. Those payments primarily were for paying for victim referrals to BLG, as well as paying the cost of bribing new "lead sources." Rose, Wray and Bogoraz agreed that if Bogoraz helped pay the cost of bribing a new "lead source," Rose and Wray would refer victims generated from that lead source exclusively to Bogoraz's law firm. Bogoraz gave Rose money to bribe multiple additional lead sources including 911 operators.

In approximately mid-2019, Bogoraz, Rose, and Bradley Pierre agreed to bribe a lead source who, to Bogoraz's knowledge, worked at a hospital. *Id.* ¶ 51. Bogoraz and Pierre agreed to

pay approximately $10,000 to the employee in return for the confidential information of motor vehicle accident victims. Bogoraz and Pierre transferred that information to Rose, who arranged for his call center to contact victims, lie to them, and steer them to a law firm owned by Pierre's wife and Bogoraz's law firm.

In total, Rose and Wray referred more than 1,000 victims to Bogoraz's law firm as part of the scheme. *Id.* ¶ 52. Rose and Wray had multiple law firms participating in the scheme; however, Bogoraz's law firm was one of the most significant financial contributors to the bribery scheme.

Bogoraz concealed the payments to Rose and Wray through money laundering. *Id.* ¶ 53. Specifically, Bogoraz helped Rose start two shell companies, namely Qwik Med and Greater New York Records Retrieval, so that Rose could accept checks from Bogoraz's law firm. Bogoraz and Rose agreed that Rose would tell banks that those companies retrieved medical records for attorneys. In reality, the companies primarily received proceeds of the bribery scheme, namely, kickbacks for victim referrals that were generated through bribes. Bogoraz and Rose used that arrangement to hide the fact that Bogoraz was paying Rose proceeds of bribery. In total, Rose and Bogoraz laundered approximately $400,000 in checks as part of the scheme.

From 2019 to 2022, Bogoraz continually cashed checks for known shell companies at Check Pros which is located at 785 Roosevelt Avenue, Carteret, New Jersey. *Id.* ¶ 55. Bogoraz cashed a total of $2,350,309.89 in checks at this location.

Following Bogoraz's arrest on January 12, 2022, Bogoraz continued to cash checks at Check Pros between February 17, 2022, and December 27, 2022, in the amount of $875,744.64. *Id.* ¶ 56. FBI surveillance observed Bogoraz on multiple occasions at Check Pros entering and exiting the location.

### B. Procedural and Case History

On October 24, 2024, the defendant appeared before your Honor and pled guilty pursuant to a plea agreement to Count Four of the Indictment, charging him with conspiracy to commit bribery. The plea agreement stipulated among other things that the value of the bribe or the improper benefit conferred was more than $1,500,000, but not more than $3,500,000; that the defendant abused his position as a paralegal and manager of a law firm to facilitate the bribery offense; and that the defendant was a manager and supervisor (but not an organizer or leader) and the criminal activity involved five or more participants and was otherwise extensive. The plea agreement further stipulated that the defendant had 10 criminal history points for the following offenses:

- The defendant committed the instance offense while under a criminal justice sentence, namely, a period of parole in connection with his August 6, 2013 conviction for money laundering.
- On or about August 6, 2013, the defendant was convicted in Kings County Supreme Court of money laundering, in violation of NYPL § 470.15, a felony, and sentenced to an indeterminate term of 42 months to 84 months' imprisonment.

- On or about October 14, 2020, the defendant was convicted in Kings County Supreme Court of two counts of driving while under the influence of alcohol, in violation of VTL § 1192, a misdemeanor, and sentenced to 15 days' imprisonment. Thereafter, on February 17, 2012, the defendant was resentenced to a term of nine months' imprisonment.
- On or about April 13, 2005, the defendant was convicted in Albany County Court of offering a false instrument to file, in violation of NYPL § 175.35, a felony, and sentenced to time served.
- On or about March 9, 2005, the defendant was convicted of enterprise corruption in Queens County Supreme Court, in violation of NYPL § 460.20, a felony, and sentenced to an indeterminate term of one to three years' imprisonment.

Lastly, the plea agreement set forth the following:

> The parties stipulate that a sentence within the Stipulated Guidelines Range is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) and they agree not to seek a sentence outside of the Stipulated Guidelines Range. The parties further agree that any oral or written sentencing submission to the Probation Office or the Court will be accompanied by an express request for a sentence that is no lower than the bottom, or no higher than the top, of the Stipulated Guidelines Range. The parties further agree they will not suggest in any way that the Probation Office or the Court consider a sentence outside of the Stipulated Guidelines Range.

### C. Discussion

The Government respectfully submits that a Guidelines sentence of 60 months' imprisonment is necessary to reflect the seriousness of the defendant's offense, to promote respect for the law, and to afford deterrence to this defendant and other similarly situated individuals. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

Bogoraz played a central role in a multi-million-dollar bribery scheme that victimized tens of thousands of New Yorkers. For nearly three years, Bogoraz paid Rose and Wray approximately $800,000 in cash and check for the purpose of bribing 9-1-1 operators and hospital employees for confidential information. In return, Rose and Wray referred more than 1,000 victims to Bogoraz' law firm—making his firm was one of the most significant financial contributors to the bribery scheme. Bogoraz abused his position of trust to manipulate nearly a thousand victims of car accidents for one purpose—his personal financial gain.

Bogoraz' staggering criminal history further demonstrates his utter disregard for the rule of law. This is Bogoraz' fifth criminal conviction. He committed the bribery offense while on parole. Bogoraz has shown himself unwilling or uncapable of living a law-abiding life. With hope, a sentence of 60 months' imprisonment will finally deter him from future crimes and send a message to the public that such repeated criminality will not be tolerated.

**D. Conclusion**

For the forgoing reasons, the Government respectfully submits that a Guidelines sentence of 60 months' imprisonment is sufficient but not greater than necessary to serve the goals of sentencing in this case.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
Mathew Andrews
Michael Lockard
Qais Ghafary
Assistant United States Attorneys
(212) 637-6526